UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
DR. GERALD R. FINKEL, as Chairman of the Joint :
Industry Board of the Electrical Industry, :
:
Petitioner, :
: REPORT AND
-against- : RECOMMENDATION
:
O.H. & M. ELECTRICAL, CORP. a/k/a OH&M : No. 23-CV-1076-LDH-JRC
ELECTRICAL, INC., :
:
Respondent. :
--------------------------------------------------------------------x

JAMES R. CHO, United States Magistrate Judge:

On February 9, 2023, petitioner Gerald R. Finkel ("petitioner"), chairman of the Joint Industry Board of the Electrical Industry ("JIB"), filed the instant petition to confirm an arbitration award against respondent O.H. & M. Electrical Corp. a/k/a OH&M Electrical, Inc. ("respondent" or "O.H. & M."). *See* Petition to Confirm an Arbitration Award ("Pet." or "Petition"), Dkt. 1. Petitioner alleges that respondent failed to remit contributions to certain employee benefit plans, as required by collective bargaining agreements, section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3), and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185. *See* Pet. ¶ 1. Although properly served, O.H. & M. has not opposed the Petition or otherwise appeared in this proceeding.

On June 22, 2023, the Honorable LaShann DeArcy Hall referred the Petition to this Court for a report and recommendation. *See* Order dated June 22, 2023. For the reasons set forth below, this Court respectfully recommends that the District Court confirm the arbitration award and grant the additional relief sought in the Petition.

**Background**

The following facts are drawn from the Petition and the evidence submitted in support.

Petitioner is the chairman of the JIB, which administers various employee benefit multi-employer plans.[1]  *See* Pet. ¶ 4.  The plans are established and collectively maintained pursuant to successive collective bargaining agreements (collectively, "CBA") between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO ("Union"), and certain employer associations.  *See id.*  According to the terms of the governing CBA, every week, signatory employers remit their contributions for the ERISA plans to the JIB, except those for the Deferred Salary Plan of the Electrical Industry ("DSP"), as well as union assessments collected by the employer from each union member employed ("Union Assessment") (collectively, the "JIB Contributions").[2]  *See id.* ¶ 6.  Pursuant to the CBA, employers are required to deduct a specified percentage from each employee's weekly wages and remit those amounts to the DSP, a tax-qualified profit-sharing plan, along with any other salary deferrals elected by the employee and the employer's required contributions to the DSP on behalf of covered employees.  *See id.* ¶ 8.  In addition, pursuant to the CBA, JIB may collect employee loan payments due to the Union and certain plans, and contributions that fund JIB's operations (collectively, the "non-ERISA plans").  *See id.* ¶ 9.  The loan payments, and amounts owed to the non-ERISA plans are referred to as "non-ERISA contributions."  *See id.*

Respondent is an employer and a member of the Association of Electrical Contractors,

---

[1] The employee benefit plans are the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, the Health Reimbursement Account Plan of the Electrical Industry, the Deferred Salary Plan ("DSP") of the Electrical Industry, the Joint Apprenticeship and Training Program, and the National Electrical Benefit Plan ("NEBF") (collectively, the "ERISA plans").  *See* Pet. ¶ 5.

[2] JIB acts as a collection agent for the Union Assessment and NEBF contribution.  *See* Pet. ¶ 6.

2

Inc. *See* Pet. ¶¶ 13, 16. As a member of the Association of Electrical Contractors, Inc., respondent agreed to be bound to the collective bargaining agreement between the Union, the New York Electrical Contractors' Association, Inc. ("NYECA"), and the Association of Electrical Contractors, Inc. (collectively, the "Associations"). *See id.* ¶ 16. The Union and Associations, including the NYECA, entered into a CBA that covered the period April 10, 2019 through April 13, 2022. *See id.* ¶ 16. By Memorandum of Agreement, the term of the CBA was extended to April 9, 2025. *See id.* ¶ 17; *see also* Dkt. 1-2.

The CBA requires that respondent make the required contributions to the ERISA plans, the non-ERISA plans, and the Union, and to submit weekly payroll reports. *See* Pet. ¶ 18; CBA, art. II, §§ 3-9, 11-13, 16-17, 19-20, art. VII, Dkt. 1-1. The CBA further provides that the parties agree to be bound by the provisions of the plan and trust agreements, including the delinquency and collections procedures of the plan. *See* Pet. ¶ 19; CBA, art. II, § 12(a), Dkt. 1-1. Accordingly, JIB established the Policy for the Collection of Delinquent Contributions ("Collection Policy") to govern the collection of delinquent contributions. *See* Pet. ¶ 21; *see also* Dkt. 1-3. Among the rules established: "if an employer fails to remit contributions and has not submitted payroll reports for such unpaid contributions, the JIB may 'use a prior week's payroll report submitted by the employer to calculate the amount of [c]ontributions due from the employer.'" *See* Pet. ¶ 23; Collection Policy, art. II, § F, Dkt. 1-3. The CBA and the Collection Policy also provide that an employer shall be liable for liquidated damages of 20 percent of the unpaid contributions, and attorneys' fees and costs if legal action is required for collection. *See* Pet. ¶ 25; CBA, art. II, § 12(a); Collection Policy, art. II, § E. The Collection Policy further provides that interest will be assessed on delinquent contributions at the rate of 8 percent, except for the NEBF, which charges interest at the rate of 10 percent. *See* Pet. ¶ 24; Amendment to

3

Collection Policy ¶ 4, Dkt. 1-3 at ECF page 8.[3]

JIB also established the Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits ("Arbitration Procedures") to govern disputes over employer delinquencies and audits.  *See* Pet. ¶ 22; *see also* Dkt. 1-4.  The Arbitration Procedures grant jurisdiction to a neutral arbitrator to adjudicate any claims that JIB brings "against an Employer, related to the Employer's obligation to contribute to [employee benefit plans], including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorney's fees and costs[.]"  *See* Pet. ¶ 26; Arbitration Procedures ¶ I(K), Dkt. 1-4.  Further, "[i]f the Neutral Arbitrator finds in whole or in part for the JIB, the Employer shall be liable for the Neutral Arbitrator's fees and the JIB's attorney's fees and costs."  Arbitration Procedures ¶ X(B); *see* Pet. ¶ 27.  Finally, any party enforcing an award issued by the arbitrator is entitled to "any attorney's fees and costs incurred."  Arbitration Procedures ¶ II(E).

A dispute arose between the parties concerning respondent's obligations to remit JIB and DSP contributions for payroll weeks ending September 28, 2022 through December 21, 2022.  *See* Pet. ¶ 28.  Petitioner therefore initiated arbitration before arbitrator Stephen F. O'Beirne.  *See id.* ¶ 29.  On January 23, 2023, the arbitrator held an arbitration hearing.  *See id.* ¶ 31.  Counsel appeared on behalf of petitioner and submitted evidence that respondent owed unpaid contributions; respondent did not appear.[4]  *See id.* ¶ 32; Opinion and Award dated January 25, 2023 ("Arbitration Award") at 3, Dkt. 1-8.

---

[3] Citations to "ECF page" refer to the page designated by the Court's Electronic Case Filing system.

[4] Respondent's counsel sought an adjournment of the arbitration hearing, which the arbitrator denied.  *See* Arbitration Award at 3-4.  In response, respondent's counsel advised that neither he nor respondent would appear at the hearing, asserting that the arbitrator's denial of the adjournment request violated respondent's due process rights.  *Id.* at 3.

4

On January 25, 2023, the arbitrator issued an award finding that respondent had violated the terms of the CBA, ERISA and the LMRA by failing to pay timely contributions for the payroll periods ending September 28, 2022 through December 21, 2022.  *See* Pet. ¶¶ 33-34; Arbitration Award at 5.  Accordingly, the arbitrator ordered respondent to pay a total of "$1,583,249.60 consisting of:  (1) JIB Contributions of $893,715.80; (2) interest on late-paid JIB contributions of $16,541.02; (3) DSP contributions[5] of $378,786.28; (4) interest on late-paid DSP contributions of $9,905.10; (5) additional interest of $24,750.98; (6) liquidated damages of $254,500.42; and [7] attorneys' fees, arbitration fees, and administrative costs of $5,050." Pet. ¶ 34; *see* Arbitration Award at 6-7; *see also* Prehearing Memorandum of Law at ¶¶ 53-54, 57, Dkt. 1-6.  The arbitrator also found respondent "responsible for any costs, including reasonable attorney's fees, incurred by the JIB in enforcing [the arbitration award]."  Arbitration Award at 7; Pet. ¶ 35.

Here, petitioner requests that the Court confirm the arbitration award in the amount of $1,583,249.60, plus interest on the unpaid principal from the date of the arbitrator's award through the date of judgment, and award petitioner attorneys' fees and costs arising out of the instant petition, in the amount of $7,847.50 and $833.08, respectively.  *See* Declaration of Adrianna R. Grancio ("Grancio Decl.") ¶¶ 3, 18-19, Dkt. 17.  According to petitioner, respondent has not made any payments to satisfy the arbitration award, the arbitration award has not been vacated or modified and no such application is pending.  *See* Pet. ¶¶ 36, 37; Kelly Decl. ¶¶ 35, 37-38.

---

[5] JIB retained Empower Retirement, Inc. as a third-party record-keeper and investment manager for DSP contributions.  *See* Declaration of Matthew Kelly ("Kelly Decl.") ¶ 10, Dkt. 16.

5

**Discussion**

I.     **Legal Standard**

Arbitration awards are not self-enforcing; rather, they must "be given force and effect by being converted to judicial orders." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). The "confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Id.* at 107-08 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). To streamline such a proceeding, a petition to confirm an arbitration award is treated as a motion to confirm. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008); *D.H. Blair*, 462 F.3d at 107-08. While ordinarily Rule 55 of the Federal Rules of Civil Procedure provides for the entry of judgment against a party who fails to appear or defend, an unopposed motion to confirm is akin to an unopposed motion for summary judgment, in that regardless of whether the respondent appears, the court reviews the motion in the context of a record—usually consisting of the agreement to arbitrate and the arbitration award decision. *See D.H. Blair*, 462 F.3d at 107-10 ("Rule 55 does not operate well in the context of a motion to confirm or vacate an arbitration award.").

Thus, this Court considers petitioner's unopposed motion as if it were an unopposed motion for summary judgment. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases involving arbitration awards, "[e]ven unopposed motions for summary judgment must 'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'" *D.H. Blair*, 462 F.3d at 110 (quoting *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

"A federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential – indeed, among the most deferential in the law." *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 868 (2d Cir. 2020) (internal quotation marks and citation omitted). "[T]he court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair*, 462 F.3d at 110 (quoting 9 U.S.C. § 9). Specifically, "there is no general requirement that arbitrators explain the reasons for their award[.]" *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972)). If, from the record, a court can infer an even "barely colorable justification for the outcome reached[,]" the court must grant the petition. *D.H. Blair*, 462 F.3d at 110 (quoting *Landy Michaels*, 954 F.2d at 797); *see Hall*, 552 U.S. at 582. In the labor context, a court must confirm an arbitration award as long as it "draws its essence from the collective bargaining agreement and is not the arbitrator's own brand of industrial justice." *Nat'l Football League Mgmt. Council v. Nat'l Football Players Ass'n*, 820 F.3d 527, 537 (2d Cir. 2016) (quoting *Int'l Bhd. Of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)). "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

**II.     This Court Recommends Confirming the Arbitration Award**

Petitioner's motion to confirm the arbitration award is supported by the CBA (Dkts. 1-1, 1-2), the Collection Policy (Dkt. 1-3), the Arbitration Procedures (Dkt. 1-4), the Notice of Intent to Arbitrate and Statement of Claims (Dkt. 1-5), the Prehearing Memorandum of Law (Dkt. 1-6), and spreadsheets reflecting the amounts owed, including accrued interest (Dkt. 1-7). Respondent has failed to provide any evidence to refute petitioner's claims.

Here, the Arbitration Procedures specifically provide that the arbitrator was authorized to hear disputes concerning "any claim by the JIB against an Employer, related to the Employer's obligation to contribute to the Funds" and was authorized to conduct an *ex parte* hearing if either party failed to appear. *See* Arbitration Procedures ¶¶ I(K), II(D). The arbitrator, relying on the applicable agreements and the employer's weekly remittance reports, detailed the amounts due to the petitioner for delinquent contributions, interest, and liquidated damages. *See* Arbitration Award at 6-7. The arbitrator also awarded petitioner's attorneys' fees, auditor fees and arbitrator fees. *See id.* at 7 & n.5. The arbitrator reviewed petitioner's calculations and found that respondent owed the following: delinquent JIB contributions of $893,715.80; interest on the contributions of $16,541.02; unpaid DSP contributions of $378,786.28; interest thereon of $9,905.10; additional interest of $24,750.98; liquidated damages of $254,500.42; and $5,050 in legal fees, arbitration fees and costs. *See* Arbitration Award at 6-7. Upon this Court's review of the record, there is more than a barely colorable justification for the arbitrator's outcomes and awards. The evidence submitted by petitioner is undisputed and there is "no evidence of a genuine dispute as to any material fact" before the Court. *See Trs. of N..Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. and Indus. Fund v. RNW Electric Corp.*, No. 22-CV-8232, 2023 WL 3080776, at *2 (S.D.N.Y. Apr. 25, 2023); *see Finkel v. J&H Elec. Contracting, Inc.*, No. 22-CV-4293, 2023 WL 3948752, at *4 (E.D.N.Y. June 12, 2023); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. and Indus. Fund v. P & J Wood Floors, Inc.*, No. 22-CV-9386, 2023 WL 2186341, at *3 (S.D.N.Y. Feb. 23, 2023) (confirming arbitrator's award where "the record indicate[d] that the [a]rbitrator based his award on undisputed evidence"). Each component of the award rendered

8

by the arbitrator is expressly authorized by the CBA, the Collection Policy, and the Arbitration Procedures. *See J&H Elec.*, 2023 WL 3948752, at *4; *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Bilt NYG, Inc.*, No. 20-CV-03846, 2020 WL 7211184, at *3 (S.D.N.Y. Nov. 19, 2020), *report and recommendation adopted*, 2020 WL 7183549 (S.D.N.Y. Dec. 7, 2020).

Accordingly, this Court recommends granting petitioner's motion to confirm the arbitration award in the amount of **$1,583,249.60**.

**III.     Pre-judgment Interest**

Petitioner also seeks prejudgment interest accrued from the date of the arbitration award until the entry of judgment. *See* Pet. ¶ Wherefore Clause. Indeed, the arbitrator's award provides that interest continues to accrue on the deficiency contained in the award. *See* Arbitration Award at 7. The Collection Policy provides that interest accrues on JIB contributions at the rate of 8 percent and interest accrues on NEBF contributions at the rate of 10 percent. *See* Amendment to Collection Policy ¶ 4, Dkt. 1-3 at ECF page 8. Accordingly, petitioner is entitled to an award of interest at the rate of 8 percent on the unpaid principal of $1,237,050.57[6] (($1,237,050.57 x .08) / 365 = $271.13 per day), and an award of interest at the rate of 10 percent on the unpaid NEBF Contributions of $35,451.51 (($35,451.51 x .10) / 365 = $9.71 per day), from January 25, 2023[7] to the date of the entry of judgment. *See* Grancio Decl. ¶ 3, Dkt. 17; *see also J&H Elec.*, 2023 WL 3948752, at *4; *Local 807 Labor-Mgmt. Health & Pension Funds v. Showtime on the Piers*, No. 18-CV-3642, 2019 WL 440641, at *4 (E.D.N.Y. Jan. 14, 2019),

---

[6] Total unpaid contributions of $1,272,502.08 minus the NEBF contributions of $35,451.51 equals $1,237,050.57. *See* Grancio Decl. ¶ 3; *see also* Dkt. 16-7 at ECF pages 1-2; Dkt. 16-8 at ECF pages 8-9.

[7] Petitioner's Memorandum of Law incorrectly uses "January 24, 2023" as the interest accrual date. *See* Pet. Mem. at 12, Dkt. 18.

9

*report and recommendation adopted*, 2019 WL 438476 (E.D.N.Y. Feb. 4, 2019).

## IV. Attorneys' Fees

Where a party "refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (quotations omitted); *see Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Manhattan Concrete Structures, Inc.*, No. 13-CV-5557, 2014 WL 4810262, at *5-*6 (E.D.N.Y. Sept. 23, 2014); *accord N.Y.C. Dist. Council of Carpenters v. Trinity Phoenix Constr. Corp.*, No. 17-CV-609, 2018 WL 1521862, at *7 (E.D.N.Y. Jan. 10, 2018). As respondent has failed to oppose the Petition, it has demonstrated no such justification.

Further, the Arbitration Procedures and arbitrator's opinion provide for an award of attorneys' fees and costs incurred in confirming an arbitration award. *See* Arbitration Procedures ¶ II(E), Dkt. 1-4; Arbitration Award at 7. Finally, a district court must award attorneys' fees and costs in an ERISA action that results in a judgment in favor of a plan. *See Labarbera v. Clestra Hauserman, Inc.*, 369 F.3d 225, 226 (2d Cir. 2004); 29 U.S.C. § 1132(g)(2)(D).

With respect to attorneys' fees, petitioner bears the burden of proving the reasonableness of the fees sought. *See Savoie v. Merchs. Bank*, 166 F.3d 456, 463 (2d Cir. 1999). In considering an application for attorneys' fees, the Court must first determine the presumptively reasonable fee. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008). This presumptively reasonable fee—or lodestar—is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks and citation omitted).

10

Courts can and should exercise broad discretion in determining a reasonable fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); *Arbor Hill*, 522 F.3d at 190 (referencing the court's "considerable discretion"). The method for determining reasonable attorneys' fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorneys' customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 186 n.3, 190.

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190. With very limited exceptions, "contemporaneous time records are a prerequisite for attorneys' fees in this Circuit." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983). The Court must review these time records and the hours an attorney billed in order to determine the reasonableness of such and, in doing so, should examine the value of the work product and "exclude excessive, redundant or otherwise unnecessary hours." *Local 807*, 2019 WL 440641, at *5 (internal quotation marks and citation omitted); *see Hensley*, 461 U.S. at 434; *Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994).

### A.  Reasonable Hourly Rates

Here, petitioner seeks an award of $7,847.50 for attorneys' fees and $833.08 in costs. *See* Grancio Decl. ¶¶ 18-19, Dkt. 17. Petitioner's request for fees is based on billing rates of $310 and $410 per hour for now-partner Adrianna Grancio, $310 per hour for junior associate Matthew Vani and $155 per hour for legal assistants. *See id.* ¶¶ 14-16. Ms. Grancio was promoted to partner on March 1, 2023 (after the instant petition was filed) and is a 2016 law

11

school graduate. *See id.* ¶ 14. Mr. Vani graduated law school in 2022. *See id.* ¶ 15. Petitioner has not provided any information about the experience of the legal assistants.

In similar ERISA matters, courts in the Eastern District of New York award fees in the range of $200 to $400 per hour for partners, $200 to $375 per hour for senior associates, and $100 to $150 for junior associates. *See Finkel v. Allstate Electric Corp.*, No. 19-CV-6260, 2020 WL 7249438, at *3 (E.D.N.Y. Oct. 1, 2020), *report and recommendation adopted*, 2020 WL 6390142 (E.D.N.Y. Nov. 2, 2020); *Gesualdi v. Interstate Payroll Co., Inc.*, No. 14-CV-06780, 2019 WL 109379, at *8 (E.D.N.Y. Jan. 4, 2019) (collecting cases). Here, the rates requested are higher than the prevailing rates for attorneys of similar experience. With respect to Ms. Grancio, the Court recommends applying the requested rate of **$310** per hour to all of her hours; the rate of $410 per hour is excessive for this straightforward case. *See Trs. of Pavers and Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Cape Mt. Heavy Constr. & Assocs., LLC*, No. 22-CV-5050, 2023 WL 5830338, at *11 (E.D.N.Y. July 31, 2023) (recommending approving Ms. Grancio's requested rate of $290 per hour), *report and recommendation adopted*, 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023); *J&H Elec.*, 2023 WL 3948752, at *6 (reducing Ms. Grancio's rate to $250 per hour); *Trs. of Pavers and Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. A. Steel Sols., LLC*, No. 22-CV-5047, 2023 WL 5152421, at *5 (E.D.N.Y. May 16, 2023) (recommending approving Ms. Grancio's requested rate of $290 per hour). As for Mr. Vani, the Court recommends **$125** per hour as reasonable given his limited experience. *See Cape Mt.*, 2023 WL 5830338, at *12 (recommending rate of $100 per hour for Mr. Vani).

Finally, the Court finds unreasonably high the requested hourly rate of $155 per hour for legal assistants. Rather, this Court recommends awarding fees for services rendered by legal

12

assistants at the reduced rate of **$100** per hour. *See Cape Mt.*, 2023 WL 5830338, at *12 (recommending award of $100 per hour for legal assistants); *Trs. of Local 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC*, No. 18-CV-1025, 2018 WL 6344188, at *1 (E.D.N.Y. Dec. 5, 2018) (holding $90 to be a reasonable hourly rate for the work of legal assistants).

### B. Reasonableness of Time Spent

Petitioner seeks fees for 27.2 hours of work by the above attorneys and staff in connection with this federal action. *See* Grancio Decl. ¶ 18. Upon review of the contemporaneous billing records submitted, the Court finds that the time spent on this action is excessive in light of the work required. Indeed, similar unopposed motions to confirm an arbitration award in the ERISA context, including motions filed by the same petitioner's counsel, have required no more than half the time spent by counsel here. *See, e.g., Drywall Tapers and Pointers of Greater N.Y. Loc. Union 1974 v. Drywall & Acoustics of Ne., Inc.*, No. 23-CV-01918, 2023 WL 8602924, at *4 (S.D.N.Y. Dec. 12, 2023) (11.4 hours); *Finkel v. Samco Elec. Corp.*, No. 22-CV-7225, 2023 WL 6172247, at *4 (E.D.N.Y. Sept. 22, 2023) (3.4 hours); *Trs. of N.A. States Carpenters Health, Pension, Annuity, Apprenticeship, and Lab. Mgmt. Cooperation Funds v. BP Interiors Corp.*, No. 23-CV-2282, 2023 WL 7001357, at *5 (E.D.N.Y. Sept. 13, 2023) (6.4 hours); *Finkel v. DNR Elec. Inc.*, No. 22-CV-6895, 2023 WL 5956814, at *2 (E.D.N.Y. Sept. 13, 2023) (1.8 hours); *Finkel v. Uptown Commc'n & Elec., Inc.*, No. 20-CV-3303, 2022 WL 2467471, at *7 (E.D.N.Y. Apr. 12, 2022) (2.5 hours). Considering that an attorneys' fee award should reflect "the minimum necessary to litigate the case effectively," *Simmons*, 575 F.3d at 174, a significant reduction in petitioner's fee request is warranted. "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application[.]'"

13

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citation omitted); *see Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022); *Ortiz v. City of N.Y.*, 843 F. App'x 355, 360 (2d Cir. 2021). The Supreme Court has noted that in fee-shifting cases, "[t]he essential goal . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Accordingly, the Court recommends applying an across-the board reduction of 33 percent of the time spent. Based on the billing records submitted, the Court recommends awarding attorneys' fees as summarized in the table below:

| Timekeeper | [Revised] Hourly Rate | Hours | Total |
|---|---|---|---|
| Ariana Grancio | $310 | 5.4 | $1,674.00 |
| Matthew Vani | $125 | 15.9 | $1,987.50 |
| Eva Keating | $100 | 2.0 | $ 200.00 |
| Abagail Frankel | $100 | 3.9 | $ 390.00 |
| Subtotal | | | $4,251.50 |
| **Total (after 33 percent reduction)** | | | **$2,848.51** |

In sum, the Court recommends granting attorneys' fees in the amount of **$2,848.51**.

## V.   Costs

The Court further finds that petitioner's request for costs in the amount of **$833.08** is reasonable and recommends granting the request for costs. *See* Dkt. 17-6 at ECF page 5. Court filing fees, service of process fees and legal research costs are routinely compensable. *See Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 365 (S.D.N.Y. 2010) (awarding costs for photocopies, filing fees, court reporter fees, Westlaw research, postage, faxes, and transportation).

## VI.   Post-judgment Interest

Finally, the Court respectfully recommends that petitioner should recover post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district

14

court." 28 U.S.C. § 1961(a).

## Conclusion

For the reasons set forth above, this Court respectfully recommends that the District Court grant the Petition to confirm the arbitration award and award petitioner **$1,583,249.60**. *See* Dkt. 17-7 [proposed order]. This Court further recommends awarding petitioner pre-judgment interest at the daily rate of $280.84 as discussed herein, from January 25, 2023 through the entry of judgment, to be calculated by the Clerk of Court. The Court also recommends that petitioner be awarded post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a) from the date judgment is entered until the date the judgment is paid in full. Finally, this Court recommends awarding petitioner attorneys' fees in the amount of **$2,848.51** and costs of **$833.08**.

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court directs petitioner's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to respondent at its last known address and to file proof of service on ECF by **January 24, 2024**. Any objections to the recommendations made in this Report must be filed with the Honorable LaShann DeArcy Hall within 14 days after the filing of this Report and Recommendation and, in any event, on or before **February 2, 2024**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d

15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated: Brooklyn, New York
January 19, 2024

s/ James R. Cho
James R. Cho
United States Magistrate Judge
